# United States Court of Appeals for the Federal Circuit

2007-5140


BLUEPORT COMPANY, LLC,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Kurt M. Rylander, Rylander & Associates, PC, of Vancouver, Washington, argued for plaintiff-appellant.

Scott Bolden, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, and John J. Fargo, Director.

Appealed from: United States Court of Federal Claims

Judge Lawrence J. Block

# United States Court of Appeals for the Federal Circuit

2007-5140

BLUEPORT COMPANY, LLC,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 02-CV-1622, Judge Lawrence J. Block.

_____

DECIDED:   July 25, 2008

_____

Before MICHEL, <u>Chief Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

GAJARSA, <u>Circuit Judge</u>.

This is an action brought by Blueport Co. ("Blueport") against the United States for copyright infringement and violations of the Digital Millennium Copyright Act of 1998 ("DMCA"), Pub. L. No. 105-304, 112 Stat. 2860 (Oct. 28, 1998), codified at 17 U.S.C. § 1201, et seq.  The Court of Federal Claims ("CFC") dismissed Blueport's claims for lack of jurisdiction on the ground that the Government has not waived sovereign immunity for any of Blueport's claims.  Because the CFC's decision contains no reversible legal error, we affirm.

**BACKGROUND**

In this case, Blueport claims that the Government—specifically the U.S. Air Force—infringed Blueport's copyright on a software program known as "the AUMD program." The AUMD program was written by Air Force Technical Sergeant Mark Davenport. On March 6, 2000, Davenport assigned all his rights in the AUMD program to Blueport.

When Davenport wrote the AUMD program, he was employed as a manager of the Air Force Manpower Data System ("MDS"), a database containing manpower profiles for each unit in the Air Force. In his capacity as an MDS Manager, Davenport updated the MDS with new data and provided reports from the MDS to Air Force personnel upon request. Davenport was also a member of the Air Force's Manpower User Group, a group of manpower personnel from each of the Air Force's major commands who provided guidance on the use of the MDS. Based on his experience with the MDS, Davenport concluded that the software the Air Force used to run the MDS was inefficient and began seeking ways to redesign the software program. Davenport initially requested training in computer programming from the Air Force, but his request was denied. Undeterred, Davenport learned the computer programming skills necessary to write the AUMD program on his own time and with his own resources. Davenport then wrote the source code[1] for the AUMD program while at

---

[1] Source code is the text of a software program written in a human-readable programming language. Microsoft Computer Dictionary 491 (5th ed. 2002). Once written, source code is compiled into machine-readable object code that runs on a computer. Id. at 372. Software programmers usually provide users with only the object code in order to prevent users from modifying the program. Theodore C. McCullough, Understanding the Impact of the Digital Millennium Copyright Act on the Open Source Model of Software Development, 6 Marq. Intell. Prop. L. Rev. 91, 93-94 (2002).

home on his personal computer. Although he wrote the program solely at his home and at his own initiative, Davenport's intent in writing the program was that other Air Force manpower personnel would use it.

In June 1998, Davenport shared an early version of the program with a fellow coworker, and both tested the program on the MDS at work during regular business hours. Based on the results of this testing, Davenport made changes to the source code of the AUMD program on his home computer. Davenport did not at that time, or at any time thereafter, bring the AUMD program's source code to work or copy it onto Air Force computers.

After these initial tests, Davenport began sharing copies of the AUMD program with other colleagues. At first, Davenport shared the AUMD program with colleagues by giving them a computer disk containing the program or by personally installing the program on their computers. Later, Davenport posted the AUMD program on an Air Force web page so that Air Force manpower personnel could download it directly. As the program became popular within the Air Force manpower community, Davenport's superiors asked him to train additional personnel in its use. During this time, he continued to modify the program based on feedback he received and, as a result, improved its functionality and eliminated programming errors. At some point, Davenport added an automatic expiration date to each new version of the AUMD program so that users were required to download the newest version when the older one expired.

In September 1998, Davenport gave a presentation to senior Air Force manpower officers at an annual conference and, according to one of Davenport's superiors, "absolutely sold his audience" on the AUMD program. Davenport's

performance report deemed him the "go to troubleshooter for [the] entire [Air Force] manpower community . . . [and] the most knowledgeable database manager in [the] career field." The performance report concluded with a recommendation to promote Davenport immediately.

Despite Davenport's success in creating the AUMD program and his willingness to share it, the Air Force eventually decided it was becoming too dependent on Davenport for access to the program. Accordingly, Davenport's superiors asked him to turn over the source code for the program, which Davenport had always kept on his home computer. When he refused to turn over the source code, his superiors threatened him with a demotion and a pay cut, and excluded him from the Manpower User Group's advisory authority.

Davenport then assigned all his rights in the AUMD program to Blueport. Subsequently, Blueport attempted to negotiate a license agreement with the Air Force. However, the Air Force refused Blueport's offer and solicited other contractors to recreate the AUMD program. The Air Force ultimately contracted with Science Applications International Corporation ("SAIC"). At the request of the Air Force, SAIC programmers modified the AUMD program's object code to extend its expiration date. This modification allowed Air Force manpower personnel to continue to use the AUMD program despite Davenport's refusal to provide the source code.

In 2002, Blueport brought the present claims against the Government for copyright infringement and violations of the DMCA. Specifically, Blueport argues that the Air Force infringed its copyright in the AUMD program. In addition, Blueport argues that the Air Force violated the DMCA by extending the expiration date in the AUMD

program's object code—thus circumventing the measures taken by Blueport to prevent unauthorized use of the program.[2] The CFC dismissed Blueport's claims for lack of jurisdiction on the ground that the Government had not waived its sovereign immunity for any of the claims. Blueport now appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

In appeals from the CFC, this court reviews fact findings for clear error and legal rulings without deference. John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1353 (Fed. Cir. 2006) (hereinafter John R. Sand & Gravel I), aff'd, 128 S. Ct. 750 (2008) (hereinafter John R. Sand & Gravel II). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Although findings of fact relating to jurisdictional issues are reviewed for clear error, the ultimate determination of the CFC's jurisdiction is a question of law that is reviewed de novo. John R. Sand & Gravel I, 457 F.3d at 1354.

In this appeal, we are required to consider the scope and application of the Government's waiver of sovereign immunity for copyright infringement under 28 U.S.C. § 1498(b). We are also required to consider whether the Government has waived its sovereign immunity for claims brought under the DMCA. In so doing, we bear in mind two long-established principles of sovereign immunity. First, "the United States, as [a]

---

[2] The DMCA provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected [by a copyright] under this title." 17 U.S.C. § 1201(a)(1)(A).

sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Testan, 424 U.S. 392, 953 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Second, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  Lane v. Pena, 518 U.S. 187, 192 (1996); see also Martinez v. United States, 333 F.3d 1295, 1306 (Fed. Cir. 2003) (en banc) ("The 'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" (quoting Soriano v. United States, 352 U.S. 270, 276 (1957))).

I.

The waiver of sovereign immunity for copyright infringement in 28 U.S.C. § 1498(b) is, in relevant part, as follows:

> Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement . . . : Provided, That a Government employee shall have a right of action against the Government under this subsection except where he was in a position to order, influence, or induce use of the copyrighted work by the Government: Provided, however, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used . . . .

(Emphases added).  Thus, § 1498(b) grants copyright owners a right of action for copyright infringement against the United States, subject to three provisos.  First, § 1498(b) does not provide a Government employee a right of action "where he was in a

position to <u>order, influence, or induce</u> use of the copyrighted work by the Government." <u>Id.</u> (emphasis added) (hereinafter "the order, influence, or induce proviso"). Second, § 1498(b) confers no right of action "with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the <u>official functions</u> of the employee." <u>Id.</u> (emphasis added) (hereinafter "the official functions proviso"). Third, § 1498(b) confers no right of action "with respect to any copyrighted work . . . in the preparation of which <u>Government time, material, or facilities</u> were used." <u>Id.</u> (emphasis added) (hereinafter "the Government time, material, or facilities proviso").

The CFC held that Blueport's copyright infringement claim against the Government was separately barred by all three provisos in § 1498(b) and thus dismissed the claim for lack of jurisdiction. On appeal, Blueport makes three arguments challenging the CFC's dismissal of its copyright infringement claim. First, Blueport argues that the provisos in § 1498(b) are affirmative defenses that must be proven by the Government, rather than jurisdictional limitations that Blueport itself must overcome. Second, Blueport argues that even if the § 1498(b) provisos are jurisdictional, the Government has the burden to show that Blueport's claims are barred by one of the provisos. Third, Blueport argues that its copyright infringement claim does not fall within any of the § 1498(b) provisos. We disagree with Blueport on all three arguments and will address each in turn.

A.

Whether a limitation on claims which may be brought against the government is jurisdictional—i.e., limits the scope of the Government's waiver of sovereign immunity—

or is merely an affirmative defense that may be raised by the Government, depends on the language and context of the statute at issue. See John R. Sand & Gravel II, 128 S. Ct. at 754-57; United States v. Brockamp, 519 U.S. 347, 352-54 (1997); United States v. Beggerly, 524 U.S. 38, 48-49 (1998). For example, both the Supreme Court and this court have examined the language and context of various statutes of limitations on claims against the Government to determine whether the time limits they impose are jurisdictional—and thus not subject to issue waiver by the Government or equitable tolling. See, e.g., John R. Sand & Gravel II, 128 S. Ct. at 753-54 (reaffirming that the statute of limitations for the Court of Federal Claims, 28 U.S.C. § 2501, is a jurisdictional limitation that requires sua sponte consideration);[3] Beggerly, 524 U.S. at 48 ("Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute."); Martinez, 333 F.3d at 1318 (noting numerous Federal Circuit cases and stating that "[f]ollowing the Supreme Court's lead, we have determined that certain statutes of limitations are subject to equitable tolling and that others are not, depending on the language and context of the particular limitation statute at issue"). Accordingly, we look to the text of § 1498(b) to determine whether the limitations therein are jurisdictional.

The text and structure of § 1498(b) demonstrate that the three provisos to the waiver of sovereign immunity are jurisdictional limitations. First, the fact that these provisos are part of the same subsection as the general waiver of sovereign immunity for copyright infringement indicates that they define the scope of the Government's

---

[3] The Court also explained in John R. Sand & Gravel II that, just as in suits between private parties, there is a rebuttable presumption that equitable tolling applies to suits against the United States. 128 S. Ct. at 755 (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990)). However, that presumption is not applicable here, because Blueport's suit was not dismissed for failure to comply with a statute of limitations.

waiver, rather than the Government's affirmative defenses.  See § 1498(b).  Indeed, the provisos are part of the same sentence in which Congress granted the general waiver of sovereign immunity for copyright infringement.  See id.  Second, the provisos themselves are phrased in terms of withholding a waiver of sovereign immunity for certain "rights of action."  The "order, influence, or induce" proviso states that a government employee "shall have a right of action against the Government under this subsection except where he was in a position to order, influence, or induce use of the copyrighted work by the Government."  Id. (emphases added).  Likewise, the "official functions" proviso and the "Government time, material, or facilities" proviso state that "this subsection shall not confer a right of action. . . ."  Id. (emphasis added).  Thus, the most natural reading of § 1498(b) is that Congress has not waived sovereign immunity for any claim that falls within the scope of the § 1498(b) provisos.  Cf.  Zoltek Corp. v. United States, 442 F.3d 1345, 1350 (Fed. Cir. 2006) (construing 28 U.S.C. § 1498(a) as not waiving sovereign immunity for infringement of a patented process where the Government did not perform all steps of the process in the United States).

Accordingly, we interpret the provisos of § 1498(b) as carving out three classes of copyright infringement claims from the Government's general waiver of sovereign immunity for copyright infringement.  This reading comports with the principle that any uncertainty as to the scope of a waiver of sovereign immunity should be resolved by construing the waiver narrowly, in favor of the sovereign.  Lane, 518 U.S. at 192.  It follows that because "the terms of the Government's consent to be sued in any court define that court's jurisdiction to entertain the suit," Testan, 424 U.S. at 953, the CFC

lacks jurisdiction over any copyright infringement claim within the scope of the § 1498(b) provisos.

B.

Blueport also argues that even if the three § 1498(b) provisos are jurisdictional, the Government has the burden of proving that its claim is barred by one of the provisos. In support, Blueport analogizes to cases in other circuit courts which imposed the burden on the Government to prove the exceptions to the waiver of sovereign immunity in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680. See, e.g., Prescott v. United States, 973 F.2d 696, 702 (9th Cir. 1992) ("Because an exception to the FTCA's general waiver of immunity although jurisdictional on its face, is analogous to an affirmative defense, we believe the Sixth and Seventh Circuits correctly placed the burden on the United States as the party which benefits from the defense."); Stewart v. United States, 199 F.2d 517, 520 (7th Cir. 1952) (holding that the exceptions to the waiver of sovereign immunity in the FTCA are affirmative defenses that must be raised and proven by the government). Other circuit courts, however, have declined to follow the cases cited by Blueport. See, e.g., Sharp v. United States, 401 F.3d 440, 443 n.1 (6th Cir. 2005) (noting that Prescott may conflict with the Supreme Court decision in United States v. Gaubert, 499 U.S. 315 (1991) and declining to address whether the plaintiff or the Government has the burden of proving the FTCA's discretionary function exception); Kiehn v. United States, 984 F.2d 1100, 1105 n.7 (10th Cir. 1993) (same); Autery v. United States, 992 F.2d 1523, 1526 n.6 (11th Cir. 1993) (same).

We agree with the CFC that the cases cited by Blueport are unpersuasive. First, these cases all interpret a statute, namely the FTCA, which is not at issue in this case.

Second, the circuit courts are divided on whether these FTCA cases are consistent with Supreme Court precedent, in particular the Court's decision in Gaubert. Third, we see no reason to interpret 28 U.S.C. § 1498(b) contrary to the long-established practice of placing the burden of establishing jurisdiction on the party "who claims that the power of the court should be exerted in his behalf." McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). Indeed, it is to be presumed that a cause of action lies outside the limited jurisdiction of the federal courts. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citing Turner v. Bank of N. Am., 4 U.S. (4 Dall.) 8, 11 (1799)). Moreover, the Supreme Court has made clear that "the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (citing McNutt, 298 U.S. at 182-83). Accordingly, the CFC correctly held that Blueport had the burden of showing that its claim is not barred jurisdictionally by the § 1498(b) provisos.

C.

Finally, we consider whether Blueport has met its burden to show that its copyright infringement claim does not fall within any of the § 1498(b) provisos. Because we agree with the CFC that Blueport's claim is barred by the "order, influence, or induce" proviso, we need not address whether the claim is also barred by the remaining provisos.

As noted, the "order, influence, or induce" proviso excludes claims by a Government employee who "was in a position to order, influence, or induce use of the copyrighted work by the Government" from the waiver of sovereign immunity for copyright infringement. See § 1498(b). Here, the CFC found that Davenport's position as a member of the Air Force manpower community gave him access and authority to

distribute the AUMD program freely to his colleagues. Blueport Co. v. United States, 76 Fed. Cl. 702, 723 (2007). In particular, the CFC found that Davenport distributed the AUMD program both by sharing individual copies with his colleagues and by posting the program on an Air Force web page so that many more people in the Air Force manpower community could access it. Id. The CFC also found that Davenport demonstrated the AUMD program to senior Air Force manpower personnel and was part of the Manpower User Group's advisory authority. Id. at 723-25. These fact findings are not clearly erroneous. In addition, the CFC concluded, based on these findings, that Davenport was in a position to influence and induce the Air Force's use of the program. Id. We agree. Because Blueport's rights in the AUMD program are derived from Davenport, we agree with the CFC that Blueport's copyright infringement claim against the Government is precluded by the "order, influence, or induce" proviso.

Nevertheless, Blueport argues that even if Davenport was once in a position to influence or induce the use of the AUMD program by the Air Force, he lost that position when he was excluded from the Air Force's Manpower User Group. On this basis, Blueport argues that it may bring a copyright infringement claim for the Air Force's use of the AUMD program after Davenport lost this position of influence. We disagree. Nothing in § 1498(b) suggests that a party who was in a position to influence the Government's use of a copyrighted work can later bring a claim against the Government for continued use of that work after he lost his position of influence. Moreover, we decline Blueport's invitation to read such an exception into the "order, influence, or induce" proviso. See Soriano, 352 U.S. at 276 (explaining that the "limitations and

conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied").

In sum, the CFC correctly determined that Blueport's copyright infringement claim falls within the "order, influence or induce" proviso of § 1498(b). Accordingly, Blueport's claim is outside the scope of the Government's waiver of sovereign immunity for copyright infringement claims, and the CFC was correct to dismiss the claim for lack of jurisdiction.

## II.

The CFC also dismissed Blueport's DMCA claims against the Government on the ground that the Government has not waived sovereign immunity for DMCA claims. Before the CFC and on appeal, Blueport's arguments against dismissal of its DMCA claims amount to a contention that a waiver of sovereign immunity for DMCA claims should be inferred. However, it is well-established that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).

The DMCA itself contains no express waiver of sovereign immunity. Indeed, the substantive prohibitions of the DMCA refer to individual persons, not the Government. See 17 U.S.C. § 1201(a)(1)(A) (providing that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title" (emphasis added)); 17 U.S.C. § 1201(a)(1)(B) (providing that "[t]he prohibition contained in subparagraph (A) shall not apply to persons . . ." (emphasis added)); 17 U.S.C. § 1202(a) (providing that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . ." (emphasis added)); 17 U.S.C.

§ 1203(c)(1) (providing that "a <u>person</u> committing a violation of section 1201 or 1202 is liable for. . . ." (emphasis added)).  As the CFC correctly observed, to hold that the DMCA includes a waiver of sovereign immunity would "require construing the word 'person' to include the term 'sovereign'."  <u>Blueport Co. v. United States</u>, 71 Fed. Cl. 768, 780 (2006).  Blueport's construction of the DMCA thus violates the rule that a waiver of sovereign immunity must be express.  <u>See King</u>, 395 U.S. at 4.

Blueport also argues that the Tucker Act, 28 U.S.C. § 1491(a)(1), provides a general waiver of sovereign immunity that authorizes DMCA claims against the Government.  The Tucker Act gives the CFC jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  This court has explained that "because the Tucker Act itself does not create a substantive cause of action, 'in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.'" <u>Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.</u>, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting <u>Fisher v. United States</u>, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). "In the parlance of Tucker Act cases, that [statutory] source must be 'money-mandating.'" <u>Fisher</u>, 402 U.S. at 1172.  A statute is money-mandating if it "'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" <u>United States v. Mitchell</u>, 463 U.S. 206, 216-17 (1983) (quoting <u>Testan</u>, 424 U.S. at 400).  Moreover, a statute can be interpreted as money-mandating if it grants the

claimant a right to recover damages either "expressly or by implication." Id. at 217 n.16 (citation omitted).

Here, the DMCA cannot be fairly interpreted as containing either an express or implied right to recover money-damages from the Government. First, as discussed above, the substantive prohibitions of the DMCA refer to persons, not the Government. Second, the DMCA specifically grants jurisdiction over DMCA claims to federal district courts, not the CFC. See 17 U.S.C. § 1203(a) (providing that "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation" (emphasis added)). This court has held that the CFC lacks jurisdiction to adjudicate claims created by statutes, like the DMCA, which specifically authorize jurisdiction in the district courts. See, e.g., Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002) (holding that 26 U.S.C. § 7432(a), which states "such taxpayer may bring a civil action for damages against the United States in a district court of the United States," provides for jurisdiction in the district courts, not the CFC); LeBlanc v. United States, 50 F.3d 1025, 1030 (Fed. Cir. 1995) (holding that 31 U.S.C. § 3730(h), which states that "[a]n employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection," does not provide jurisdiction in the CFC). Accordingly, we reject Blueport's argument that the CFC has jurisdiction over DMCA claims against the Government under the Tucker Act.

Finally, Blueport argues that even if there is no waiver of sovereign immunity in the DMCA or the Tucker Act, the waiver of sovereign immunity in § 1498(b) is sufficient. The CFC properly rejected this argument. This court has held that the DMCA created

new claims for liability that are separate and distinct from claims for copyright infringement. Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1204 (Fed. Cir. 2004) ("The DMCA does not create a new property right for copyright owners. . . . The anticircumvention and anti-trafficking provisions of the DMCA create new grounds of liability."); see also Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc., 421 F.3d 1307, 1318-19 (Fed. Cir. 2005) (discussing the relationship between copyright infringement and violations of the DMCA). Because a claim for a violation of the DMCA is not, as Blueport argues, a subset of claims for copyright infringement, the CFC was correct to hold that the waiver of sovereign immunity in § 1498(b) does not extend to claims against the Government pursuant to the DMCA.

Accordingly, the CFC was correct to dismiss Blueport's DMCA claims for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the CFC's decision dismissing Blueport's claims against the Government for lack of jurisdiction is

AFFIRMED.