**Calvin C. and Evangeline M. JACKSON, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 11–108T.

United States Court of Federal Claims.

Aug. 22, 2011.

Calvin C. Jackson and Evangeline M. Jackson, League City, TX, pro se.

Carl D. Wasserman, Trial Attorney, Tax Division, United States Department of Justice, Washington, D.C. for the defendant. With him were G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, Steven I. Frahm, Chief, Court of Federal Claims Section, and John A. DiCicco, Principal Deputy Assistant Attorney General, Tax Division.

## OPINION

HORN, J.

### FINDINGS OF FACT

Plaintiffs Calvin C. and Evangeline M. Jackson filed a *pro se* complaint in this court on February 18, 2011, accompanied by the $350.00 filing fee. Plaintiffs allege that the Internal Revenue Service (IRS) owes them a refund of $7,920.47 for the 2002 tax year. The Jacksons paid $10,166.47 in federal income taxes through income tax withholding in 2002, which was deemed paid on April 15, 2003. *See* 26 U.S.C. § 6513(b) (2006). The plaintiffs did not sign and file a Form 1040 tax return for the 2002 tax year until July 8, 2006, which was received by the IRS on July

27, 2006. The 2002 Form 1040, filed in the names of Calvin C. and Evangeline M. Jackson, showed an overpayment. The IRS appears to agree that this constitutes an overpayment of $7,920.47, for the 2002 tax year which could have been due plaintiffs, if proper returns and claims for refund had been filed. On September 7, 2006, the IRS sent the plaintiffs a letter disallowing plaintiffs' assertion that they were due a refund. The IRS letter stated that the Jacksons had filed their "original tax return more than 3 years after the due date. Your tax return showed an overpayment. To claim that overpayment as a credit or to obtain a refund, you have to file your tax return within 3 years from its due date. Withheld tax and estimated tax are deemed to be paid on the last day prescribed (i.e., April 15) for filing your tax return. The excess of any amount allowable for the earned income credit over the actual income tax is treated in a similar manner to these prepaid credits." The letter also explained that the Jacksons had two options: submit an administrative appeal to the IRS Appeals Office, or file suit in a United States District Court or the United States Court of Federal Claims within two years from the date of the disallowance letter.

The Jacksons requested reconsideration of the decision and sent a letter, received by the IRS on October 31, 2006. In the letter, the Jacksons tried to explain the late filing of their 2002 tax return, and indicated that they were overwhelmed by the birth of triplets, one of whom sustained challenges following birth, and stated, "before we were able to file, Hurricane Katrina wiped out part of our house, and completely destroyed a rental property that we hoped would help to pay some of my son's medical expenses." On January 30, 2007, an IRS Appeals Officer sent a letter with the IRS initial findings on the case. The letter also indicated that the case was being forwarded to the Fresno, California, IRS Appeals Office for consideration. The IRS letter stated:

My review of your claim is deemed to be filed timely, since you filed your 2002 return on 07/27/06 it is also considered to be the filing date of your claim, which is within the 3 year rule. However, under the

provisions of Section 6511(b)(2)(A) [sic] provides that only amounts paid within the immediate 3 years preceding the filing of the claim are entitled to be refunded.

In your case, your original tax return is your claim for refund. Since your 2002 tax liability of $2,246.00 was deemed paid through wage tax withholding of $10,166.47, your tax overpayment of $7,920.47 is deemed to have been paid on 4/15/03. Your claim for a refund is thus determined to be timely if you filed it on or before 4/15/06. Your claim did not meet this provision because you did not file it until 7/27/06.

The IRS letter invited the Jacksons to submit "any additional information for me to consider" before February 14, 2007, and indicated that if no additional response was received from the Jacksons, the IRS Appeals Officer's initial findings contained in the letter would become final.

The Jacksons sent another letter, received by the IRS on March 8, 2007, requesting "that the three year period to request a refund be tolled or extended for at least the six-month period following Hurricane Katrina which denied us not only access to our home, personal belongings, and basic necessities, but also records and information needed to file a return." The Jacksons' letter also referenced an extension offered to victims of Hurricane Katrina "to file our 2005 tax returns."[1] On March 16, 2007, the IRS Appeals Office reaffirmed its denial of plaintiffs' claims, noting that the Jacksons had not provided documentation of financial disability from 2002 through 2005 or documentation that they were victims of Hurricane Katrina. The letter also explained that the Jacksons could file suit anytime "within 2 years from the mailing date" of the first denial, but emphasized that "[y]our two-year period has NOT been shortened or extended by our reconsideration of your claim." (emphasis in original).

Plaintiffs did not file suit within two years of the first denial by the IRS. Several years later, however, on March 10, 2010, the Jacksons sent another letter to the IRS, which was received by the IRS on March 17, 2010. In the March 10, 2010 letter, the Jacksons asserted that "Hurricane Katrina occurred during our 3 year period to claim our refund. Thus, our 3 year period should be extended to accommodate the relief afforded by the Emergency Tax Relief Act of 2005." On September 20, 2010, the IRS again denied the Jacksons' request, noting that the Jacksons could have filed suit in a United States District Court or the United States Court of Federal Claims " "within two-years from the date on the letter denying the claim, which the Austin IRS Campus mailed to you on September 7, 2006." The letter also stated: "Your original return was filed on 07–25–2006. IRS received it on 07–27–2006. You filed a timely claim but did not meet the provisions of Section 6511(b)(2)(A), which deems the overpayment of $7,920.47, was paid on 04–15–2003. No extensions were filed to extend the refund statute date."

The Jacksons filed suit in the United States Court of Federal Claims on February 18, 2011. On June 2, 2011, the defendant filed a motion to dismiss for lack of subject matter jurisdiction because the plaintiffs had failed to "file this suit within two years of the IRS's disallowance of their claim, as required by [26 U.S.C.] § 6532(a)." Plaintiffs did not file a response to defendant's motion before the July 5, 2011 due date and, to date, have not done so.

## DISCUSSION

■■■ When determining whether a complaint filed by a *pro se* plaintiff is sufficient to invoke review by a court, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Erick-*

---

1. Plaintiffs may have been referencing IRS Notice 2005–73 (September 2005) which, as discussed more fully below, allowed for extensions for certain federal tax filings due between August 2005 and August 2006. *See* IRS Notice 2005–73 (September 2005). Notably, however, this case involves plaintiffs' 2002 tax return and a disallowance letter issued on September 7, 2006.

son v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). However, "there is no 'duty [on the part] of the trial court ... to create a claim which [plaintiff] has not spelled out in his [or her] pleading....'" *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Bussie v. United States,* 96 Fed.Cl. 89, 94 (2011); *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007). "While a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States,* 93 Fed.Cl. 163, 165 (2010) (citing *Hughes v. Rowe,* 449 U.S. at 9, 101 S.Ct. 173 and *Taylor v. United States,* 303 F.3d 1357, 1359 (Fed.Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), *reh'g and reh'g en banc denied* (Fed.Cir. 2002)).

Although, ordinarily, the court allows *pro se* plaintiffs some flexibility in complying with procedural rules and filing deadlines. Mr. Calvin C. Jackson, however, appears to be a member of the Texas State Bar Association, with his own law practice in Houston, Texas. On the first page of the 2002 Form 1040 received in Austin, Texas by the IRS on July 27, 2006, plaintiffs' names appear as Calvin C. and Evangeline M. Jackson. On the signature page of the same Form 1040, signed on July 8, 2006, plaintiff Calvin C. Jackson lists his phone number as 832–474–6161. That phone number matches the phone number for Attorney Calvin C. Jackson at the Jackson Law Firm Office in Houston, Texas. *See* The Jackson Law Office, Attorney Profile, *Available* at http://calvinjackson.com/form02.html; State Bar of Texas, *Available at* http://www.texasbar.com. Consequently, plaintiffs failure to submit timely filings, including to defendant's motion to dismiss, is less explainable or excusable

than if attributable to a typical, non-lawyer, *pro se* plaintiff.

"[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki,* —— U.S. ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011); *see also Hertz Corp. v. Friend,* —— U.S. ——, 130 S.Ct. 1181, 1193, 175 L.Ed.2d 1029 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 514, 126 S.Ct. 1235)); *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990))); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *see also Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); and *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998))); *Pikulin v. United States,* 97 Fed.Cl. 71, 76, *appeal dismissed* (Fed.Cir.2011). In fact,

"[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte,* even where, as here, neither party has raised this issue." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1369 (Fed. Cir.2004) (citing *Textile Prods., Inc., v. Mead Corp.,* 134 F.3d 1481, 1485 (Fed.Cir.), *reh'g and en banc suggestion denied* (Fed.Cir.), *cert. denied,* 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 58 (1998)), *reh'g and reh'g en banc denied* (Fed.Cir.2004), *cert. dismissed as improvidently granted,* 548 U.S. 124, 126 S.Ct. 2921, 165 L.Ed.2d 399 (2006).

■ Pursuant to the Rules of this court and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(1), (2) of the Rules of the United States Court of Federal Claims (RCFC) (2011); Fed.R.Civ.P. 8(a)(1), (2) (2011); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir. 1997); *see also Klamath Tribe Claims Comm. v. United States,* 97 Fed.Cl. 203, 208 (2011); *Gonzalez–McCaulley Inv. Grp., Inc. v. United States,* 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998); *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1363 n. 9 (Fed.Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed. 2004)). As stated in *Ashcroft v. Iqbal,* "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atlantic Corp. v. Twombly,*] 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal,* 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

■ When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955 (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Samish Indian Nation v. United States,* 419 F.3d 1355, 1364 (Fed.Cir.2005); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003).

■ The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2006). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United*

*States v. Navajo Nation,* 556 U.S. 287, ——, 129 S.Ct. 1547, 1551, 173 L.Ed.2d 429 (2009); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Greenlee Cnty., Ariz. v. United States,* 487 F.3d 871, 875 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2007), *cert. denied,* 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999).

 "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Radioshack Corp. v. United States,* 566 F.3d 1358, 1360 (Fed.Cir.2009); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). In *Ontario Power Generation, Inc. v. United States,* 369 F.3d 1298 (Fed.Cir. 2004), the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

The underlying monetary claims are of three types.... First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver.... Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." *Eastport S.S.* [*Corp. v. United States,* 178 Ct.Cl. 599,] 372 F.2d [1002,] 1007–08 [ (1967) ] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954))).... Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport S.S.* [*Corp. v.*

*United States*], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.; see also* [*United States v.*] *Testan,* 424 U.S. [392,] 401–02, 96 S.Ct. 948 ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting *Eastport S.S.* [*Corp. v. United States*], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

*Ontario Power Generation, Inc. v. United States,* 369 F.3d at 1301.

 To prove that a statute or regulation is money mandating, plaintiffs must demonstrate that an independent source of substantive law relied upon " 'can fairly be interpreted as mandating compensation by the Federal Government.'" *United States v. Navajo Nation,* 556 U.S. at ——, 129 S.Ct. at 1552 (quoting *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe,* 537 U.S. at 472, 123 S.Ct. 1126; *United States v. Mitchell,* 463 U.S. at 217, 103 S.Ct. 2961; *Blueport Co., LLC v. United States,* 533 F.3d 1374, 1383 (Fed.Cir.2008), *cert. denied,* 555 U.S. 1153, 129 S.Ct. 1038, 173 L.Ed.2d 468 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. *See United States v. Navajo Nation,* 129 S.Ct. at 1551 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.,* statutes or contracts).")." "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'"

*Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1308 (Fed.Cir.2008) (quoting *Greenlee Cnty., Ariz. v. United States*, 487 F.3d at 876); *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed.Cir.2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); *Peoples v. United States*, 87 Fed.Cl. 553, 565–66 (2009).

 To meet the jurisdictional prerequisites to file a tax refund suit in this court, plaintiffs first must satisfy the tax refund schematic detailed in Title 26 of the Internal Revenue Code, (*see, e.g.*, 26 U.S.C. § 7422 (2006), 26 U.S.C. § 6511 (2006), and 26 U.S.C. § 6532 (2006)),[2] which establishes that a claim for refund must be filed with the IRS before filing suit in federal court, and establishes strict deadlines for filing claims. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008); *United States v. Dalm*, 494 U.S. 596, 609–10, 110 S.Ct. 1361, 108 L.Ed.2d 548, *reh'g denied*, 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523 (1990); *Buser v. United States*, 85 Fed.Cl. 248, 256 (2009). Moreover, in a tax refund claim, the court only may hear claims for which the petitioning taxpayer has fulfilled all of his or her tax liabilities for the tax year in question before the refund claim is heard. *Flora v. United States*, 357 U.S. 63, 72–73, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) (*Flora I* ), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (*Flora II* ), *reh'g denied*, 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902 (1960). In *Flora II*, the United States Supreme Court again clearly stated that 28 U.S.C. § 1346(a)(1) requires "payment of the full tax before suit...."[3] *Flora II*, 362 U.S. at 150–51, 80

S.Ct. 630; *see also Shore v. United States*, 9 F.3d 1524, 1526 (Fed.Cir.1993) ("The full payment requirement of Section 1346(a)(1) and *Flora* applies equally to tax refund suits brought in the Court of Federal Claims ....") (citing *Tonasket v. United States*, 218 Ct.Cl. 709, 711–12, 590 F.2d 343 (1978)).

 Before filing a claim in federal court, a plaintiff also is required to file a claim with the IRS for the amount of the alleged refund, pursuant to 26 U.S.C. § 7422(a), which states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a); *see also Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed.Cir.), *reh'g and reh'g en banc denied*, 467 F.3d 1322 (Fed.Cir.2006), *cert. denied*, 549 U.S. 1338, 127 S.Ct. 2033, 167 L.Ed.2d 762 (2007). Essentially, section 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits. *Chicago Milwaukee Corp. v. United States*, 40 F.3d 373, 374 (Fed.Cir.1994); *see also Gluck v. United States*, 84 Fed.Cl. 609, 613 (2008). "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a refund suit." *Id.* (citing *Chicago Milwaukee Corp. v. United States*, 40 F.3d at 374 (citing *Bur-*

---

2. Section 6532(a)(1) states:

 No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

 26 U.S.C. § 6532(a)(1).

3. Section 1346(a)(1) reads:

 The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
 (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

 28 U.S.C. § 1346(a)(1) (2006).

*lington N., Inc. v. United States,* 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982))).

The United States Supreme Court has indicated that:

> A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

*United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. at 4, 128 S.Ct. 1511 (citations omitted); *see also Radioshack Corp. v. United States,* 566 F.3d at 1360 ("[I]n the context of tax refund suits, the [Supreme] Court has held that the Court of Federal Claims's Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)."). Once a party has established compliance with 26 U.S.C. § 7422(a), the party may, if successful, also recover interest for its claim for refund, if successful. *See Deutsche Bank AG v. United States,* 95 Fed. Cl. 423, 427 n. 3 (2010) ("There is no question, however, that this court has subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006), over claims, such as the present one, seeking to recover statutory interest on income tax refunds.") (citing *Brown & Williamson, Ltd. v. United States,* 231 Ct.Cl. 413, 688 F.2d 747, 752 (1982)).

Further, in order for a tax refund case to be duly filed in a federal court under section 7422(a), the filing must comply with the timing requirements set forth in 26 U.S.C. § 6511(a):

> The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions there-to are not to be lightly implied. When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity.

*Block v. North Dakota ex rel. Bd. of Univ. and School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *see also Buser v. United States,* 85 Fed.Cl. at 257. The applicable language of section 6511(a) states:

> Claim for credit or refund of an overpayment of any tax imposed by this title ... shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid....

26 U.S.C. § 6511(a); *see also* Treas. Reg. § 301.6511(a)–1(a)(1) (2011) ("In the case of any tax ...: If a return is filed, a claim for credit or refund of an overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later.").

As articulated by the United States Supreme Court in *Commissioner v. Lundy,* 516 U.S. 235, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996):

> A taxpayer seeking a refund of overpaid taxes ordinarily must file a timely claim for a refund with the IRS under 26 U.S.C. § 6511. That section contains two separate provisions for determining the timeliness of a refund claim. It first establishes a filing deadline: The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(b)(1) (incorporating by reference 26 U.S.C. § 6511(a)). It also defines two "look-back" periods: If the claim is filed "within 3 years from the time the return was filed," *ibid.,* then the taxpayer is entitled to a refund of "the portion of the

tax paid within the 3 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(A) (incorporating by reference 26 U.S.C. § 6511(a)). If the claim is not filed within that 3–year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B) (incorporating by reference § 6511(a)).

*Comm'r v. Lundy,* 516 U.S. at 239–40, 116 S.Ct. 647 (footnote omitted); *see also United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. at 8, 128 S.Ct. 1511 (determining that the language of section 6511(a) clearly states that taxpayers "must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim."). The Supreme Court in *Lundy* also noted that a timely filing was a prerequisite for the Court of Federal Claims to have jurisdiction for a refund claim. *See Comm'r v. Lundy,* 516 U.S. at 240, 116 S.Ct. 647 ("Unlike the provisions governing refund suits in United States District Court or the United States Court of Federal Claims, which make timely filing of a refund claim a jurisdictional prerequisite to bringing suit, *see* 26 U.S.C. § 7422(a); *Martin v. United States,* 833 F.2d 655, 658–659 (7th Cir.1987), the restrictions governing the Tax Court's authority to award a refund of overpaid taxes incorporate only the look-back period and not the filing deadline from § 6511"). In sum, Congress has provided strict statutory guidelines laying out the statute of limitations for the filing of a federal tax refund claim.

The plaintiffs seek a refund for the 2002 tax year. They acknowledge in their complaint that they "paid U.S[.] income taxes through income withholding for the 2002 income tax year on 4/15/2003 in the amount of $7,920.47." Plaintiffs claim that based on this date and 26 U.S.C. § 6511(b)(2)(A), "[p]laintiffs had three years to file an income *tax return* for the 2002 tax year and still claim a refund." (emphasis added).

Defendant argues, however, that this court has no jurisdiction to hear plaintiffs' claim because plaintiffs filed their suit in this court after the applicable statute of limitations had expired. For support, defendant relies on 26 U.S.C. § 6532, which precludes any suit "for the recovery of any internal revenue tax ... after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." 26 U.S.C. § 6532(a)(1).[4] Because the plaintiffs' initial disallowance notice is dated September 7, 2006, defendant argues that 26 U.S.C. § 6532 bars any suit filed after September 7, 2008. Defendant also points out that plaintiffs were repeatedly reminded in communications from the IRS that their time to file a lawsuit would expire two years from the date of disallowance. Plaintiffs, however, did not file the lawsuit before this court until February 18, 2011, 29 months after the deadline pursuant to 26 U.S.C. § 6532.

As the United States Court of Appeals for the Federal Circuit has recognized, 26 U.S.C. § 6532(a) sets forth a strict two-year statute of limitations on tax refund claims following disallowance of a claim by the IRS, for which "there is no implied equitable exception...." *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1463 (Fed.Cir. 1998); *see also United States v. Brockamp,* 519 U.S. 347, 351–52, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997); *Marcinkowsky v. United States,* 206 F.3d 1419, 1422 (Fed.Cir.2000); *Orlando v. United States,* 94 Fed.Cl. 286, 292–93 (2010). Although plaintiffs appear to have been faced with personal challenges, encountered unforeseen difficulties, and the communications from the IRS to the plaintiffs were not always models of clarity, plaintiffs continuously have missed deadlines before Hurricane Katrina, and even in this court. Regardless, as discussed immediately above, equitable tolling is not available to

---

4. The court also notes that since plaintiffs' taxes were deemed paid on April 15, 2003 as a result of the withholding tax paid for the 2002 tax year, pursuant to 26 U.S.C. § 6511, plaintiffs did not file a timely claim with the IRS, even if the plaintiffs' 1040 Form for the 2002 tax year, filed on July 27, 2006, could be considered such a claim.

extend the IRS filing deadlines at issue in this case.

The statute at 26 U.S.C. § 6532(a)(2) provides that a taxpayer may extend this two-year period through an agreement "in writing between the taxpayer and the Secretary." 26 U.S.C. § 6532(a)(2); *see also Brach v. United States,* 98 Fed.Cl. 60, 67 (2011). The Jacksons, however, do not claim to have signed any such agreement, nor is there any such document in the record. Moreover, it is undisputed that plaintiffs filed suit in this court on February 18, 2011, more than four years after receiving their initial disallowance notice from the IRS on September 7, 2006.

 Plaintiffs also contend that the Tax Increase Prevention and Reconciliation Act of 2005, Pub.L. No. 109–222, 120 Stat. 345 (2005), required the IRS to extend the period for victims of Hurricane Katrina. Plaintiffs allege that "[w]hen Hurricane Katrina hit the Gulf Coast," plaintiffs claim to have lived "well within the disaster zone," thus qualifying for an extension. The Tax Increase Prevention and Reconciliation Act is summarized in Treasury Publication 4492. *See* Internal Rev. Serv., Dep't of the Treasury, Publ'n 4492 (January 2006). The time periods for which filing grace times were provided do not cover the 2002 tax year. The statutory authority cited in the Notice included 26 U.S.C. § 7508A (2006), titled "Authority to postpone certain deadlines by reason of Presidentially declared disaster or terroristic or military action;" and Treasury Regulation § 301.7508A–1 (2011), titled "Postponement of certain tax-related deadlines by reasons of a federally declared disaster or terroristic or military action," which permits the Secretary to "specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability. . . ." 26 U.S.C. § 7508A(a). Treasury Publication 4492, attached, in part, to the plaintiffs' complaint, states:

> The IRS has extended deadlines that apply to filing returns, paying taxes, and performing certain other time-sensitive acts for certain taxpayers affected by Hurricane Katrina, Rita, or Wilma, until **February 28, 2006.** The extension applies to deadlines (either an original or extended due date) that occur during the following periods.

> After August 28, 2005 (August 23, 2005, for Florida affected taxpayers), and before February 28, 2006, for taxpayers affected by Hurricane Katrina.

Internal Rev. Serv., Dep't of the Treasury, Publ'n 4492 (emphasis in original). Treasury Publication 4492 relied on the authority of IRS Notice 2005–81 (November 2005), which stated:

> This notice supplements Notice 2005–66, 2005–40 I.R.B. 620, which postponed until January 3, 2006, deadlines for the IRS to perform certain acts under section 7508A of the Code with respect to certain taxpayers affected by Hurricane Katrina. This notice (1) expands the definition of "covered disaster area" to include additional counties and parishes that the Federal Emergency Management Agency (FEMA) determined were eligible for federal assistance after the IRS issued Notice 2005–66; (2) extends the deadlines for the IRS to perform certain acts to February 28, 2006, to match the deadlines for affected taxpayers to file, pay, and perform certain acts. . . .

IRS Notice 2005–81. As stated in IRS Notice 2005–81, the initial postponement until January 3, 2006 was established in IRS Notice 2005–66 (September 2005). In addition to IRS Notice 2005–81 and IRS Notice 2005–66, postponements for certain taxpayers to perform certain acts were granted in a number of additional IRS Notices, culminating in IRS Notice 2006–20 (February 2006). IRS Notice 2006–20, stated in part, "[t]his notice further postpones those deadlines through August 28, 2006, for the IRS and for affected taxpayers in the parishes in Louisiana and the counties in Mississippi and Alabama that the Federal Emergency Management Agency (FEMA) determined were eligible for Individual Assistance or Individual and Public Assistance." *Id.* Plaintiffs, however, cannot claim relief from the statute, notices, and publication, since they do not fall within the extended time periods described therein.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is **GRANTED** and plaintiffs' complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

