Delarick **EVANS, In re the Estate of Lorraine Ruth Williams also known as Estate of Lorraine Ruth Williams; Delarick Evans, Plaintiff,**

v.

**UNITED STATES, Defendant.**

Nos. 10–536L, 11–676L.

United States Court of Federal Claims.

Oct. 22, 2012.

---

444

Delarick Evans, Lansing, Kansas, pro se.

Daniel G. Steele, Department of Justice, Environment and Natural Resources Division, Natural Resources Section, Washington, D.C., for the defendant. With him were Ignacia S. Moreno, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice. Roger L. Hudson, Attorney Advisor, United States Department of the Interior, Alaska Regional Office, Anchorage, Alaska, of counsel.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Before the court are two consolidated suits, originally filed separately, by the same *pro se* plaintiff, Delarick Evans, in the United States Court of Federal Claims.[1] In both cases currently before this court, plaintiff asserts that he failed to inherit trust, land, and stock upon the death of his biological mother, an Alaska Native.[2]

The complaints currently before this court indicate that plaintiff was born to Lorraine Ruth Williams, an Alaska Native, on September 30, 1975, and was adopted by another family on February 24, 1981. On December 31, 1981, plaintiff's biological mother was listed on the roll of the Alaska Native Claims Settlement Act of 1971 (ANCSA), Pub.L. No. 92–203, 85 Stat. 688 (codified as amended at 43 U.S.C. §§ 1601–1629h). According to several exhibits accompanying plaintiff's complaints, including a Certificate of Death, plaintiff's biological mother was murdered in

1. Case No. 10–536L originally was assigned to another Judge.

2. Plaintiff has filed complaints under the name Delarick Evans as well as under the name Delarick Hunter. In plaintiff's filing in Case No. 11–676L, he states, "[y]our plaintiff, Delarick Evans, previously named, Delarick LaMont Hunter." *See also Hunter v. Young,* 238 Fed.Appx. 336 (10th Cir.2007) ("Delarick Hunter, also known as Delarick Evans"). The court notes that the two consolidated cases currently before the court are plaintiff's third and fourth filings in the United States Court of Federal Claims, in addition to numerous suits filed in other Federal and State courts. Plaintiff's first case in the United States Court of Federal Claims, *Hunter v. United States,* No. 09–355C (Fed. Cl., filed June 3, 2009) (Alaska Native benefits), was dismissed for lack of subject matter jurisdiction. Plaintiff's second case filed in this court, *Evans v. United States,* No. 11–245C, (Fed. Cl., filed Apr. 18, 2011) (Alaska Native benefits), also was dismissed for lack of subject matter jurisdiction. Both cases were filed *in forma pauperis,* while plaintiff was in a correctional facility. Plaintiff appealed the decision in *Evans v. United States,* No. 11–245C (Fed. Cl.) to the United States Court of Appeals for the Federal Circuit in *Evans v. United States,* No. 11–5115, but the appeal was dismissed for failure to pay the docketing fee. Plaintiff also filed other federal civil actions, *in forma pauperis,* while in a correctional facility, including: *Evans v. McKune,* No. 5:12CV03103 (D. Kan., filed April 26, 2012) (habeas corpus); *Evans v. McKune,* No. 5:11 CV03070 (D. Kan., filed Apr. 1, 2011) (habeas corpus); *Hunter v. McKune,* No. 08–3184 (10th Cir., filed July 9, 2008) (habeas corpus); *Hunter v. McKune,* No. 5:08CV03113 (D. Kan., filed May 7, 2008) (prisoner civil rights); *Hunter v. Kansas,* No. 5:08CV03075 (D. Kan., filed Mar.

10, 2008) (prisoner civil rights); *Hunter v. Autry,* No. 5:07CV03203 (D. Kan., filed Aug. 8, 2007) (prisoner civil rights); *Hunter v. McKune,* No. 5:07CV03142 (D. Kan., filed May 24, 2007) (habeas corpus); *Hunter v. Supreme Court of Kansas,* No. 5:07CV03037 (D. Kan., filed Feb. 14, 2007) (writ of mandamus); *Hunter v. Young,* No. 05–3074, 2006 WL 2850278 (D.Kan. Oct. 4, 2006), *aff'd,* 238 Fed.Appx. 336 (10th Cir.2007) (prisoner civil rights). In addition, Mr. Evans has filed multiple other criminal and civil state complaints and appeals: *Evans v. Aramark,* No. 11 C–001092 (Kan.3d Dist., filed Sept. 20, 2011); *Evans v. Dep't of Admin.,* No. 11 C–001001 (Kan.3d Dist., filed Sept. 1, 2011); *Delarick Evans, A/K/A Delarick Hunter v. Kansas,* No. 105568 (Kan. Ct.App., filed Feb. 3, 2011); *Evans v. Boyles,* No. 10C–000728 (Kan.3d Dist., filed May 19, 2010); *Kansas v. Evans,* No. 103059 (Kan. Ct.App., filed Sept. 15, 2009); *Evans v. Werholtz,* No. 09C–001388 (Kan.3d Dist., filed Sept. 2, 2009); *Evans v. Correct Care Solutions,* No. 09C–000776, (Kan.3d Dist., filed May 15, 2009); *Evans v. Dep't of Soc. & Rehab. Servs.,* No. 09C000487 (Kan.3d Dist., filed Mar. 25, 2009); *Evans v. Bartee,* No. 09CV00195 (Kan. 10th Dist., filed Jan. 8, 2009); *Kansas v. Delarick William Evans AKA Delarick Hunter,* No. 100667 (Kan. Ct.App., filed June 16, 2008); *Hunter v. Rice,* No. 08C–000479 (Kan.3d Dist., filed March 20, 2008); *Hunter v. Correct Care Solutions,* No. 08C–000089 (Kan.3d Dist., filed Jan. 15, 2008); *Hunter v. Kansas,* No. 07CV03275 (Kan. 10th Dist., filed April 25, 2007); *Hunter v. Werholtz,* No. 07C–000153 (Kan.3d Dist., filed Jan. 19, 2007); *Delarick Evans A/K/A Delarick Hunter v. Honorable J. Dexter Burdette,* No. 96913 (Kan. Sup.Ct., filed July 10, 2006); *Evans v. [no name listed],* No. 05CV04965 (Kan. 10th Dist., filed June 22, 2005); and *Kansas v. Delarick William Evans A/K/A Delarick Lamont Hunter,* No. 92858 (Kan. Ct.App., filed Aug. 5, 2004).

the State of Washington in 1984. Plaintiff filed several other documents with this court, including documents alleged to be from the United States Department of the Interior and a Native American tribal association. The documents include a 1975 letter to Ms. Williams from the Department of the Interior advising her that she is enrolled in Doyon Limited, but may seek enrollment in a newly established Thirteenth Region for non-resident Alaska Natives, a letter to plaintiff declaring his membership in the Nenana Native Council, a letter from the Tanana Chiefs Conference to plaintiff stating that Ms. Williams was enrolled in the Thirteenth Regional Corporation, although her shares could not be located, and an undated, incomplete stock certificate issued to plaintiff's mother, Ms. Williams by an unnamed source.

Plaintiff's complaint in Case No. 10–536L, which he titled an Application for Heirship, is very short, barely over one page long, and is comprised of only eight paragraphs, including the following factual information:

In December 31, 1981, the deceased was added to the roll under the Alaska Native Claims Settlement Act. (In support and incorporated herein is movant's Certificate of Indian Blood (Descendant) identified as exhibit "1".)

In 1984, while in the State of Washington, in Snohomish—County, the biological mother of movant was murdered. (See in support and incorporated herein as exhibits [sic] "2", five (5) pages, of Arlington Times).

Movant assert [sic] respectfully that he is ¼ or more Eskimo–Indian under the definitions of federal law. 43 USC 1602. (In support to show heirship to the deceased is a copy of original birth certificate identified as 115–75–26525. It is identified as exhibit "3".)

Petitioner also shows the court a lawfull [sic] decress [sic] of adoption within The County of Wyandotte, Kansas. The case identified as 80 A 0168. A copy is attached and incorporated herein identified as exhibit "4".

In Case No. 10–536L, plaintiff seeks "an order of decree allowing any interest of trust and land of deceased to be passed to her biological child (son) who is half-blood [Eskimo Indian] under federal law(s)." Defendant responds by filing a motion to dismiss plaintiff's complaint, asserting that this court lacks subject matter jurisdiction in Case No. 10–536L because plaintiff seeks only declaratory relief.

Plaintiff's complaint in Case No. 11–676L is somewhat longer than the complaint he filed in Case No. 10–536L, although no more clear regarding the nature of his claims. In Case No. 11–676L, plaintiff states, "Delarick Evans, is a federally recognized Native, by the Bureau of Indian Affairs," and, "[y]our applicant received a copy from BIA [Bureau of Indian Affairs], (Alaska Region), signed by, Donna Carroll, dated 07/12/11, his Certificate of—Indian Blood (Descendant)." According to plaintiff:

Pursuant to, 43 U.S.C. 1604(b)(1)(2)(3)(4), your applicant's natural mother was on the roll prepared by the Secretary, and enrolled according to their [sic] region, village, or other place she resided on the date of the 1970 census enumeration. As your applicant's exhibit "D" reveal [sic], your applicant's biological mother was enrolled in, Doyon, Limited.

Plaintiff also contends that:

Contrary to, 43 U.S.C.S. 1604(c), your applicant was not afforded his right (or privilege), because he was not enrolled-in enrolled in [sic], Doyon, Limited, in accordance with the election of his biological mother, Lorraine Ruth Williams. (Exhibit D). At the time your applicant's mother [sic] election was honored by the Secretary, all dependants [sic] members of her household who are less [sic] eighteen years of age.

Plaintiff further argues that:

From the time your applicant's mother, Lorraine Ruth–Williams, was put on the roll as prepared by the Secretary, in accordance with, 43 U.S.C.S. 1604(b)(1),(2),(3),(4), your applicant, has not been provided his stock certificate—in accordance with, 43 U.S.C.S. 1606(g)(B)(i)(I). As pointed out in exhibit "H" and "I", your applicant was still a member of, Lorraine Ruth Williams'

household until, August 3, 1976. Since your applicant was under eighteen and a member of her household in accordance with 43 U.S.C.S. 1604(c), he was, and still is, entitled to a stock certificate, from, Doyon, Limited.

Finally, plaintiff maintains that "[p]ursuant to, 43 U.S.C.S. 1606(i)(j)(m), your applicant is entitled to receive shares and interest from the revenues, net-income from the date entitled, until the present date. See also, 43 U.S.C. 1606(h)(i)(ii)(iii). [sic]"

As stated by plaintiff, he seeks:

(1) $3,000,000.00 (Three Million Dollars) from the Judgment Fund, 25 U.S.C.S. 1401 through 1407, plus interest.

(2) Equal-share distribution of stock authorized by the, Alaska Native Claims Settlement Act [ANCSA], 43 U.S.C.S. 1601 et seq.,

(3) All records/files of the BIA, be corrected and reflect such information/data, as intented [sic] by U.S. Congress, Plaintiff enrolled in Doyon.

(4) Plaintiff be afforded all trust responsibility by the Secretary of the Interior, as authorized in 25 U.S.C.S. 162a(d).

(5) All further relief, from trust of defendant, pursuant to, 25 USCS 406, 25 USCS 407, and 25 USCS 466: $ 3,000,000.00.

Defendant filed an answer to plaintiff's complaint in Case No. 11–676L, and raises three affirmative defenses: that plaintiff has failed to state a claim upon which relief can be granted, that plaintiff's claims are barred for lack of subject matter jurisdiction, and that plaintiff's claims are barred by the applicable statute of limitations.

In both of the above captioned, consolidated cases, plaintiff filed Motions for Leave to Proceed *In Forma Pauperis.* The Judge originally assigned to Case No. 10–536L, granted plaintiff's Motion to Proceed *In Forma Pauperis,* prior to transferring that case to the undersigned Judge. In Case No. 11–676L, the court grants plaintiff's motion for the purposes of the case.

## DISCUSSION

When determining whether a complaint filed by a *pro se* plaintiff is sufficient to invoke review by a court, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). "However, ' "[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading." ' " *Lengen v. United States,* 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975))); *see also Bussie v. United States,* 96 Fed.Cl. 89, 94, *aff'd,* 443 Fed.Appx. 542 (Fed.Cir.2011); *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007). "While a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States,* 93 Fed.Cl. 163, 165 (2010) (citing *Hughes v. Rowe,* 449 U.S. at 9, 101 S.Ct. 173 and *Taylor v. United States,* 303 F.3d 1357, 1359 (Fed.Cir.2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), *reh'g and reh'g en banc denied* (Fed.Cir.2002)).

It is well established that " 'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' " *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise

and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki,* — U.S. —, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181, 1193, 175 L.Ed.2d 1029 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 514, 126 S.Ct. 1235)); *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990))); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *see also Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); and *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998))); *Pikulin v. United States,* 97 Fed.Cl. 71, 76, *appeal dismissed,* 425 Fed. Appx. 902 (Fed.Cir.2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte,* even where ... neither party has raised this issue." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1369 (Fed.Cir.) (citing *Textile Prods., Inc., v. Mead Corp.,* 134 F.3d 1481, 1485 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1998)), *reh'g and reh'g en banc denied* (Fed.Cir. 2004), *cert. granted in part,* 546 U.S. 975, 126 S.Ct. 543, 163 L.Ed.2d 458 (2005), *cert. dismissed as improvidently granted,* 548 U.S. 124, 126 S.Ct. 2921, 165 L.Ed.2d 399 (2006).

Pursuant to the Rules of the United States Court of Federal Claims (RCFC) and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2012); Fed.R.Civ.P. 8(a)(1), (2) (2012); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir.1997); *see also Klamath Tribe Claims Comm. v. United States,* 97 Fed.Cl. 203, 208 (2011); *Gonzalez–McCaulley Inv. Grp., Inc. v. United States,* 93 Fed.Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998); *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1363 n. 9 (Fed. Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed.2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" *Three S Consulting v. United States,* 104 Fed.Cl. 510, 523 (2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). As stated in *Ashcroft v. Iqbal,* "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atl. Corp. v. Twombly,*] 550 U.S. at 555 [127 S.Ct. 1955]. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. at 678,

129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

■ When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus,* 551 U.S. at 94, 127 S.Ct. 2197 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955 (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Samish Indian Nation v. United States,* 419 F.3d 1355, 1364 (Fed.Cir.2005); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003).

■ The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (Supp. V 2011). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Navajo Nation,* 556 U.S. 287, 289–90, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Greenlee Cnty., Ariz. v. United States,* 487 F.3d 871, 875 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.

2007), *cert. denied,* 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir. 1999).

■ "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Radioshack Corp. v. United States,* 566 F.3d 1358, 1360 (Fed.Cir.2009); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). In *Ontario Power Generation, Inc. v. United States,* the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types.... First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver.... Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." *Eastport S.S. [Corp. v. United States,* 178 Ct.Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [ (1967) ] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket' ") (quoting *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954)).... Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport S.S.,* 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant,

expressly or by implication, a right to be paid a certain sum." *Id.; see also Testan,* 424 U.S. at 401–02 [96 S.Ct. 948] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself .... can fairly be interpreted as mandating compensation by the Federal Government *for the damage sustained.'"* (quoting *Eastport S.S.,* 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

*Ontario Power Generation, Inc. v. United States,* 369 F.3d 1298, 1301 (Fed.Cir.2004); *see also Twp. of Saddle Brook v. United States,* 104 Fed.Cl. 101, 106 (2012).

▇▇▇▇ To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon " 'can fairly be interpreted as mandating compensation by the Federal Government.'" *United States v. Navajo Nation,* 556 U.S. at 290, 129 S.Ct. 1547 (quoting *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe,* 537 U.S. at 472, 123 S.Ct. 1126; *United States v. Mitchell,* 463 U.S. at 217, 103 S.Ct. 2961; *Blueport Co., LLC v. United States,* 533 F.3d 1374, 1383 (Fed.Cir.2008), *cert. denied,* 555 U.S. 1153, 129 S.Ct. 1038, 173 L.Ed.2d 468 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. *See United States v. Navajo Nation,* 556 U.S. at 290, 129 S.Ct. 1547 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.,* statutes or contracts).").  " 'If the statute is not money-mandating, the

Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,* 525 F.3d 1299, 1308 (Fed.Cir.2008) (quoting *Greenlee Cnty., Ariz. v. United States,* 487 F.3d at 876); *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); *Peoples v. United States,* 87 Fed.Cl. 553, 565–66 (2009).

**Case No. 10–536L**

▇▇▇▇ In Case No. 10–536L, plaintiff asserts jurisdiction pursuant to 25 U.S.C. § 372a(1)(a) (2006), 43 U.S.C. § 1602 (2006), and 25 C.F.R. § 15.2 (2012). These provisions, however, are not money-mandating and, therefore, do not provide jurisdiction to this court to review plaintiff's claims. The statute at 25 U.S.C. § 372a(1)(a), titled, "Heirs by adoption," defines the various ways in which an adoption can be finalized and recognized for estate purposes. The regulation at 25 C.F.R. § 15.2, titled, "What definitions do I need to know?" is an alphabetical list of definitions relevant to the probate of certain Indian estates, for Chapter 15 of the Title 25 of the Code of Federal Regulations, "Probate of Indian Estates, Except for Members of the Osage Nation and the Five Civilized Tribes," but the definitions do not by themselves grant this, or any other plaintiff, independent rights.[3] Neither 25 U.S.C. § 372a(1)(a) nor 25 C.F.R. § 15.2 mandate monetary compensation by the federal government for possible damages sustained, as required to establish jurisdiction in this court under the Tucker Act. *See United States v. Navajo Nation,* 556 U.S. at 289–90, 129 S.Ct. 1547.

Moreover, plaintiff has offered no explanation as to how either 25 U.S.C. § 372a(1)(a) or 25 C.F.R. § 15.2 relate to the allegations included in plaintiff's com-

---

**3.** As explained in the regulation 25 C.F.R. § 15.1, titled, "What is the purpose of this part?"

This part contains the procedures that we follow to initiate the probate of the estate of a deceased person for whom the United States holds an interest in trust or restricted land or trust personalty. This part tells you how to file

the necessary documents to probate the estate. This part also describes how probates will be processed by the Bureau of Indian Affairs (BIA), and when probates will be forwarded to the Office of Hearings and Appeals (OHA) for disposition.

25 C.F.R. § 15.1(a) (2012).

plaint in Case No. 10–536L. The statute at 25 U.S.C. § 372a concerns children adopted by an Indian, not children like the plaintiff, who claims he was born to an Indian and then adopted by another family. The regulation cited by plaintiff includes definitions to be used in understanding Indian probate statutes and regulations, but plaintiff has not cited to a substantive right pursuant to which an individual claimant like himself might be entitled to monetary relief from the United States.

■ In Case No. 10–536L, plaintiff also cites to 43 U.S.C. § 1602, part of the ANCSA, stating that: "Movant assert [sic] respectfully that he is 1/4 or more Eskimo–Indian under the definitions of federal law. 43 USC 1602." The ANCSA statute extinguished native Alaskan claims of aboriginal title in exchange for 40 million acres of land and $962.5 million in direct payments and royalties. *See Bay View, Inc. v. United States,* 278 F.3d 1259, 1262 (Fed.Cir.2001), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied,* 537 U.S. 826, 123 S.Ct. 114, 154 L.Ed.2d 37 (2002); *Seldovia Native Assoc. v. United States,* 144 F.3d 769, 771 (Fed.Cir. 1998). To manage the conveyance of land and money, the ANCSA statute created about 220 village corporations and twelve geographical native-owned regional corporations, including Doyon, Ltd., to receive monetary distributions. Plaintiff claims Ms. Williams, plaintiff's biological mother, first was enrolled in Doyon, Ltd., followed by enrollment in the Thirteen Regional Corporation.[4] *See Bay View, Inc. v. United States,* 285 F.3d 1035, 1037 n. 1 (Fed.Cir.), *cert. denied,* 537 U.S. 826, 123 S.Ct. 114, 154 L.Ed.2d 37 (2002); *Bay View, Inc. v. United States,* 278 F.3d at 1262; *Doyon, Ltd. v. United States,* 214 F.3d 1309, 1311 (Fed.Cir.), *reh'g denied,* 214 F.3d 1309 (2000). The ANCSA statute, however, is not money-mandating. *See Bay View, Inc. v. United States,* 278 F.3d at 1265 (in which the court stated "as this court previously held in *Seldovia* [*Native Ass'n, Inc. v. United States,* 144 F.3d 769 (Fed.Cir.1998) ], ANCSA did not create a trust relationship between the United States and the Alaska natives or any substantive right enforceable against the United States for money damages"); *Seldovia Native Ass'n, Inc. v. United States,* 144 F.3d at 784 ("there is no provision of the ANCSA that mandates the payment of money for failure to carry out the provisions of the statute"); *Cape Fox Corp. v. United States,* 4 Cl.Ct. 223, 234 (1983). Therefore, to the extent plaintiff raises a claim under the ANCSA statute, the statute does not create jurisdiction in this court.

■ In Case No. 10–536L, plaintiff seeks, "an order of decree allowing any interest of trust and land of deceased to be passed to her biological child (son) who is half-blood under federal law(s)." This court, however, does not have the authority to grant the type of equitable or declaratory relief plaintiff requests. The United States Court of Federal Claims has limited, specific jurisdiction to grant declaratory relief. The United States Court of Appeals for the Federal Circuit has stated that:

> The Court of Federal Claims has never been granted general authority to issue declaratory judgments, and to hold that the Court of Federal Claims may issue a declaratory judgment in this case, unrelated to any money claim pending before it, would effectively override Congress's decision not to make the Declaratory Judgment Act applicable to the Court of Federal Claims.

*Nat'l Air Traffic Controllers Ass'n v. United States,* 160 F.3d 714, 716–17 (Fed.Cir.1998); *see also United States v. Tohono O'Odham Nation,* —— U.S. ——, 131 S.Ct. 1723, 1729, 179 L.Ed.2d 723 (2011) (The United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers."); *Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir. 2000) ("Except in strictly limited circumstances, *see* 28 U.S.C. § 1491(b)(2), there is

---

**4.** As noted by the United States Court of Appeals for the Federal Circuit, "[o]riginally, the ANCSA established only twelve Regional Corporations. A thirteenth Regional Corporation, however, was subsequently established to represent those Alas-kan Natives living in the lower forty-eight States." *Bay View, Inc. v. United States,* 285 F.3d at 1037 n. 1 (citing 43 U.S.C. § 1606(c) (2000)).

no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief.") (citing *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction' ") and *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed.Cir.1990)); *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998) ("[T]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.' ") (quoting *Austin v. United States*, 206 Ct.Cl. 719, 723 (1975), *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975)), *reh'g denied* (1999); *Halim v. United States*, 106 Fed.Cl. 677, 683–84 (2012); *Smalls v. United States*, 87 Fed.Cl. 300, 307 (2009); *Pryor v. United States*, 85 Fed.Cl. 97, 103 (2008) ("Apart from ordering relief under 28 U.S.C. § 1491(a)(2) or (b)(2), the Court of Federal Claims has no power to grant a declaratory judgment.... The Court of Federal Claims cannot adjudicate a complaint that seeks only declaratory relief." (citing *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d at 717)). None of the exceptions which permit the United States Court of Federal Claims to grant declaratory and equitable relief apply to plaintiff's claims. This court, therefore, does not have jurisdiction to grant the declaratory relief plaintiff requests.

▆▆▆▆ Additionally, plaintiff's claims in Case No. 10–536L, are barred by the applicable statute of limitations. According to 28 U.S.C. § 2501 (2006):

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.... A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

28 U.S.C. § 2501. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.

2006), *aff'd*, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues " ' "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." ' " *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1358–59 (Fed.Cir.) (quoting *Samish Indian Nation v. United States*, 419 F.3d 1355, 1369 (Fed.Cir.2005)) (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003), *cert. denied*, 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 76 (2004)), *reh'g en banc denied* (Fed.Cir.2011); *see also FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed.Cir.2012); *Martinez v. United States*, 333 F.3d at 1303 (quoting *Nager Elec. Co. v. United States*, 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966), *motion denied*, 184 Ct.Cl. 390, 396 F.2d 977 (1968)) ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.' "); *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir. 1988); *see also Brizuela v. United States*, 103 Fed.Cl. 635, 639, *aff'd*, 492 Fed.Appx. 97, 2012 WL 3196031 (Fed.Cir. Aug. 8, 2012). A claim's accrual is " 'determined under an objective standard' " and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. *FloorPro, Inc. v. United States*, 680 F.3d at 1381 (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed.Cir.1995), *cert. denied*, 517 U.S. 1243, 116 S.Ct. 2496, 135 L.Ed.2d 189 (1996)).

▆▆▆▆ While the statute at 28 U.S.C. § 2501 discusses "legal disability," the statute is not clear as to whether "legal disability" encompasses infancy. "Legal disability" is not defined in Section 2501. The words "[a] petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues," 28 U.S.C. § 2501, however, "were intended to consolidate by substitution the prior archaic terminology 'married women first accrued during marriage, of per-

sons under the age of twenty-one years first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued.'" *See Goewey v. United States,* 222 Ct.Cl. 104, 112, 612 F.2d 539, 543–44 (1979). Therefore, it appears that "legal disability" includes such conditions as infancy because, as the historical note to Section 2501 indicates, it was "not designed to change existing law." *See id.; see also Wolfchild v. United States,* 101 Fed. Cl. 54, 75–76, (noting that 28 U.S.C. § 2501 allows a plaintiff who was a minor when a claim accrued to bring suit three years upon reaching majority), *recons. denied,* 101 Fed. Cl. 92 (2011); *Clark v. United States,* 228 Ct.Cl. 778, 779 (1981) (finding that under 28 U.S.C. § 2501, when the claim accrued, 12 year old child was legally disabled and had three years upon reaching the age of majority in which to sue). Because plaintiff asserts that he failed to inherit trust, land, and stock upon his mother's death in 1984, plaintiff had to file his complaint in Case No. 10–536L within three years of reaching the age of majority. *See* 28 U.S.C. § 2501 ("A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases."). Plaintiff did not do so. Plaintiff was born on September 30, 1975, but did not file the complaint in Case No. 10–536L until August 8, 2010, when he was nearly 35 years old. Thus, even if plaintiff's claims were not subject to dismissal for lack of subject matter jurisdiction, this court still would not be able to entertain plaintiff's complaints due to expiration of the applicable statute of limitations.

■ In Case No. 10–536L, plaintiff also demanded a jury trial. As recently noted by another Judge of the United States Court of Federal Claims, "[t]he court is without authority to grant plaintiffs' request for a jury trial. 'It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government.'" *Cox v. United States,* 105 Fed.Cl. 213, 216 n. 10 (2012) (quoting *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981)).

In a July 11, 2011 joint status report in Case No. 10–536L, plaintiff also requested a hearing to examine, without relevance to any particular claims and with insufficient specificity, why his "corporate federal records cannot be located." Trial judges are given broad discretion to control and manage their dockets, including with respect to procedural matters. *See, e.g., Amado v. Microsoft Corp.,* 517 F.3d 1353, 1358 (Fed.Cir.2008) (citing *Nolan v. de Baca,* 603 F.2d 810, 812 (10th Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980)); *Nutrinova Nutrition Specialties and Food Ingredients GmbH v. Int'l Trade Comm'n,* 224 F.3d 1356, 1360 (Fed.Cir.2000). "[T]he parties' right to be heard may be fulfilled by the court's review of the briefs and supporting affidavits and materials submitted to the court." *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988); *see also Toquero v. I.N.S.,* 956 F.2d 193, 196 n. 4 (9th Cir.1992) ("It is well-settled that oral argument is not necessary to satisfy due process."); *Lake at Las Vegas Investors Grp. v. Pac. Malibu Dev. Corp.,* 933 F.2d 724, 729 (9th Cir.), *reh'g denied* (9th Cir. 1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992) (which affirmed the trial court and discussed the court's interpretation of a local District Court rule, finding no prejudicial error based on the denial of oral argument in a summary judgment motion because the party "had the opportunity to apprise the district court of any arguments it believed supported its position. . . ."). Therefore, a trial court is not required to hold a hearing, but may do so if the court believes the hearing would assist the court to resolve the case. The decision of whether or not to hold an oral argument is made in each case, based on the filings and issues raised in that particular case. Trial courts have broad discretion regarding this decision. After carefully reviewing plaintiff's complaints in Case No. 10–536L and in Case No. 11–676L, the other filings to the court, as well as in light of the foregoing, the court concludes that a hearing in this case is neither required, nor would it assist the court to reach its decisions in the above captioned two cases brought by plaintiff.

**Case No. 11–676L**

In Case No. 11–676L, plaintiff states, "[j]urisdiction is pursuant to, 28 U.S.C.S. 1491(a)(1); and 28 U.S.C.S. 1491(a)(2)." As discussed above, the Tucker Act, 28 U.S.C. § 1491, waives sovereign immunity over claims invoking federal constitutional clauses, federal statutes, or regulations that mandate monetary compensation. It does not, as plaintiff asserts, grant blanket jurisdiction to this court over any allegation brought by a plaintiff. The United States Court of Appeals for the Federal Circuit stated in *Blueport Co., LLC v. United States*, 533 F.3d 1374 (Fed.Cir.2008), *cert. denied*, 555 U.S. 1153, 129 S.Ct. 1038, 173 L.Ed.2d 468 (2009):

> This court has explained that "because the Tucker Act itself does not create a substantive cause of action, 'in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.'" *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed.Cir.2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc in relevant part)). "In the parlance of Tucker Act cases, that [statutory] source must be 'money-mandating.'" *Fisher [v. United States]*, 402 F.3d at 1172.

*Id.* at 1383 (first bracket in original).

Although plaintiff specifically points only to the Tucker Act as the basis for this court's jurisdiction over his various claims in Case No. 11–676L, plaintiff also scatters several other federal statutes throughout his complaint, including: 25 U.S.C. § 162a(d) (2006), 25 U.S.C. §§ 406–407 (2006), 25 U.S.C. § 466 (2006), 25 U.S.C. §§ 1401–1407(2006), and 43 U.S.C. § 1601 *et seq.* (2006). Plaintiff references 43 U.S.C. § 1601 *et seq.*, the ANCSA statute, pursuant to which the plaintiff alleges he is entitled to certain stock benefits. In Case No. 11–676L, plaintiff states, "[c]ontrary to, 43 U.S.C.S. 1604(c), your applicant was not afforded his right (or privilege), because he was not enrolled-in enrolled in [sic], Doyon, Limited, in accordance with the election of his biological mother, Lorraine Ruth Williams." Plaintiff also argues that "[s]ince your applicant was under eighteen and a member of her [Ms. Williams's] household in accordance with 43 U.S.C.S. 1604(c), he was, and still is, entitled to a stock certificate, from, Doyon, Limited," but that "your applicant, has not been provided his stock certificate—in accordance with, 43 U.S.C.S. 1606(g)(B)(i)(I)." As such, plaintiff seeks, "[e]qual-share distribution of stock as authorized by the, Alaska Native Claims Settlement Act, 43 U.S.C.S. 1601 et seq."

As previously discussed regarding Case No. 10–536L, however, the ANCSA statute is not money-mandating. *See Bay View, Inc. v. United States*, 278 F.3d at 1265 ("as this court previously held in *Seldovia [Native Ass'n, Inc. v. United States*, 144 F.3d 769 (Fed.Cir.1998) ], ANCSA did not create a trust relationship between the United States and the Alaska natives or any substantive right enforceable against the United States for money damages"); *Seldovia Native Ass'n, Inc. v. United States*, 144 F.3d at 784 ("there is no provision of the ANCSA that mandates the payment of money for failure to carry out the provisions of the statute"); *see also Cape Fox Corp. v. United States*, 4 Cl.Ct. at 234. Therefore, this court does not have jurisdiction over plaintiff's claims based on the ANCSA statute in either Case No. 10–536L or Case No. 11–676L.

Moreover, in Case No. 11–676L, plaintiff has failed to state a claim upon which relief can be granted. The United States Court of Appeals for the Federal Circuit has explained: "If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1). If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted." *Adair v. United States*, 497 F.3d 1244, 1251 (Fed.Cir.2007) (citations omitted). In examining what must be pled in order to state a claim, under both RCFC 8(a)(2) and Rule (8)(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to

relief." RCFC 8(a)(2); Fed.R.Civ.P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The United States Supreme Court, in the *Twombly* case, stated that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Papasan v. Allain,* 478 U.S. 265, 286 [106 S.Ct. 2932, 92 L.Ed.2d 209] (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1 [122 S.Ct. 992, 152 L.Ed.2d 1] (2002) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236 [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").... [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

*Bell Atl. Corp. v. Twombly,* 550 U.S. at 555–56, 570, 127 S.Ct. 1955 (footnote and other citations omitted; brackets and omissions in original); *see also Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555–57, 570, 127 S.Ct. 1955); *Totes–Isotoner Corp. v. United States,* 594 F.3d 1346, 1354–55 (Fed.Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 92, 178 L.Ed.2d 28 (2010); *Bank of Guam v. United States,* 578 F.3d 1318, 1326 (Fed.Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557, 127 S.Ct. 1955)), *reh'g and reh'g en banc denied* (Fed.Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 3468, 177 L.Ed.2d 1056 (2010); *Cambridge v. United States,* 558 F.3d 1331, 1335 (Fed.Cir.2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)); *Cary v. United States,* 552 F.3d 1373, 1376 (Fed.Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555, 570, 127 S.Ct. 1955)), *reh'g denied* (Fed.Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 2878, 174 L.Ed.2d 580 (2009); *Peninsula Grp. Capital Corp. v. United States,* 93 Fed.Cl. 720, 726–27 (2010), *appeal dismissed,* 454 Fed.Appx. 900 (2011); *Legal Aid Soc'y of New York v. United States,* 92 Fed.Cl. 285, 292, 298, 298 n. 14 (2010).

When deciding whether a plaintiff has failed to state a claim upon which relief can be granted, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Cambridge v. United States,* 558 F.3d at 1335 (citing *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)); *Cary v. United States,* 552 F.3d at 1376 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991)); *Anaheim Gardens v. United States,* 444 F.3d 1309, 1315 (Fed.Cir.), *reh'g denied* (Fed.Cir.2006); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir. 1998); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). If a defendant or the court challenges jurisdiction or a plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *See*

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). Therefore, although the court must assume that the undisputed facts alleged in the complaint are true for the purposes of the motion to dismiss and draws all reasonable inferences in the plaintiffs' favor, the facts alleged in the complaint must be plausible and not merely naked assertions devoid of a factual basis. *See Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d at 1363 n. 9 (mere allegations of law and conclusions of fact are insufficient to support a claim).

Plaintiff alleges that under the Indian Judgment Tribal Fund Use or Distribution Act, which plaintiff refers to as the "Judgment Fund, 25 U.S.C.S. 1401 through 1407," [5] he is entitled to $3,000,000.00. The Indian Tribal Fund Use or Distribution Act provides for the distribution of funds appropriated in satisfaction of a judgment of the Indian Claims Commission, or this court, in favor of an Indian tribe.[6] *See* 25 U.S.C. § 1401. Pursuant to the Indian Tribal Fund Use or Distribution Act, the Secretary of the Interior was instructed to prepare and submit a plan to Congress for the distribution of the funds, *see* 25 U.S.C. § 1402(a),[7] taking into account the needs and desires of relevant Indian tribes, *see* 25 U.S.C. § 1403(b), and to

---

5. No decision of the United States Supreme Court, the United States Court of Appeals for the Federal Circuit, or of the United States Court of Federal Claims has been identified as having directly addressed whether 25 U.S.C. § 1401 *et seq.* is money-mandating. The statute would appear to mandate the payment of money to a plaintiff injured by the failure of the Secretary to properly distribute funds pursuant to the statute. The statute provides that, "funds appropriated in satisfaction of a judgment of the Indian Claims Commission or the United States Court of Federal Claims ... shall be made pursuant to the provisions of this chapter." 25 U.S.C. § 1401(a). The Federal Circuit in *Agwiak v. United States* noted that: "We have repeatedly recognized that the use of the word 'shall' generally makes a statute money-mandating." *Agwiak v. United States*, 347 F.3d 1375, 1380 (Fed.Cir.2003) (citing *McBryde v. United States*, 299 F.3d 1357, 1361 (Fed.Cir.2002); *Huston v. United States*, 956 F.2d 259, 261–62 (Fed.Cir.1992); and *Grav v. United States*, 886 F.2d 1305, 1307 (Fed.Cir. 1989)). In *LeBeau v. United States*, 474 F.3d 1334 (Fed.Cir.), *cert. denied*, 551 U.S. 1146, 127 S.Ct. 3013, 168 L.Ed.2d 728 (2007), the United States Court of Appeals for the Federal Circuit found that a Distribution Act of 1972, which provided a formula for distributing funds from the Judgment Fund that had been set aside by Congress to satisfy a judgment of the Indian Claims Commission, "created a trust responsibility between the United States and the lineal descendants" of an Indian tribe determined eligible to share in the fund and "the Secretary breached this trust responsibility by unreasonably delaying in the partial distribution" of the fund. *Id.* at 1341–42. The court in *LeBeau* also noted that, "the parties do not dispute that the 1972 Distribution Act imposed trust responsibilities and can be fairly interpreted ... as mandating compensation for damages sustained as a result of a breach." *Id.* at 1340–41; *see also Wolfchild v. United States*, 101 Fed.Cl. at 86 (holding that the Indian Judgment Fund Use and

Distribution Act, 25 U.S.C. § 1401 *et seq.*, applied to judgments awarded in a series of "Wolfchild" cases). To the extent that 25 U.S.C. § 1401 *et seq.*, is a money-mandating statute, the court, however, does not reach the merits of plaintiff's claims because, for the reasons discussed throughout this opinion, this plaintiff has failed to state a claim upon which relief can be granted.

6. "In 1976, the Indian Claims Commission was abolished, at which point Congress instructed the Commission to 'transfer [all cases] to the Court of Claims' and granted jurisdiction to the Court of Claims [a predecessor court to this court] over those cases previously heard by the Commission." *Wolfchild v. United States*, 101 Fed.Cl. at 81 (first bracket in original) (citing Pub.L. No. 94–465, § 23, 90 Stat.1990 (1976)).

7. Although the status of 25 U.S.C. § 1402(a) is not necessary to a determination of this case, 25 U.S.C. § 1402(a) was repealed by the Reports Elimination Act, Pub.L. No. 104–66, 109 Stat. 707 (1995). *See* Pub.L. No. 104–66, 109 Stat. 707 (1995); H.R. Doc. No. 103–7, at 113 (1993). *See also Wolfchild v. United States*, 101 Fed.Cl. 92, 96 (2011) ("The Distribution Act states that '[w]ithin one year after appropriation of funds to pay a judgment of the ... Court of Federal Claims to any Indian tribe, the Secretary of the Interior shall prepare and submit to Congress a plan for the use and distribution of the funds.' 25 U.S.C. § 1402(a). The Secretary's duty to submit such a plan to Congress, however, was repealed by the plain terms of the Reports Elimination Act. *See Wolfchild VIII*, 101 Fed.Cl. at 90–91. Specifically, the Reports Elimination Act terminated 'each provision of law requiring the submittal to Congress ... of any annual, semiannual, or other regular periodic report specified on the list described under subsection (c).' Reports Elimination Act § 3003(a), 109 Stat. at 734.").

hold any remaining funds in trust, *see* 25 U.S.C. § 1401(b). Plaintiff, however, has not alleged facts demonstrating that that the Secretary of the Interior failed to fulfill or violated the government's fiduciary duties under the Indian Tribal Fund Use or Distribution Act. Plaintiff also does not cite to a judgment related to plaintiff's interests that has been issued with respect to the Indian Tribal Fund Use or Distribution Act. Rather, plaintiff baldly asserts, without explanation, that the Act entitles him to $3,000,000.00. Such a " 'naked assertion[s]' devoid of 'further factual enhancement,' " fails to state a claim upon which relief can be granted, even drawing all reasonable inferences in plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ The statutes at 25 U.S.C. §§ 162a, 406–407, and 466 are money-mandating. *See United States v. Mitchell*, 463 U.S. at 211, 228, 103 S.Ct. 2961 (holding that 25 U.S.C. § 162a, 25 U.S.C. §§ 406–407, and 25 U.S.C. § 466 are money-mandating statutes under the Tucker Act). Insofar as plaintiff's claims allegedly arise under 25 U.S.C. § 162a(d), plaintiff has not pled any factual allegations related to the statute. The statute at 25 U.S.C. § 162a(d) describes the Secretary's trust responsibilities, including:

(1) Providing adequate systems for accounting for and reporting trust fund balances.

(2) Providing adequate controls over receipts and disbursements.

(3) Providing periodic, timely reconciliations to assure the accuracy of accounts.

(4) Determining accurate cash balances.

(5) Preparing and supplying account holders with periodic statements of their account performance and with balances of their account which shall be available on a daily basis.

(6) Establishing consistent, written policies and procedures for trust fund management and accounting.

(7) Providing adequate staffing, supervision, and training for trust fund management and accounting.

(8) Appropriately managing the natural resources located within the boundaries of Indian reservations and trust lands.

25 U.S.C. § 162a(d). Plaintiff has not indicated how the Secretary failed to perform his duties with respect to the plaintiff. Indeed, plaintiff only alleges with regard to 25 U.S.C. § 162a that, "[p]laintiff be afforded all trust responsibility by the Secretary of the Interior, as authorized in 25 U.S.C.S. 162a(d)." This allegation is far too vague and fails to identify how 25 U.S.C. § 162a(d) was violated with respect to Mr. Evans. Any claim by plaintiff pursuant to 25 U.S.C. § 162a(d), therefore, must fail.

■ Plaintiff also has not stated a claim under 25 U.S.C. §§ 406–407 or 25 U.S.C. § 466. The statute at 25 U.S.C. § 406 concerns the sale of timber on Indian lands held in trust by the Secretary of the Interior and provides standards to guide the sale of timber by the Indian owners or by the Secretary on behalf of the owners. The statute at 25 U.S.C. § 407 similarly describes the conditions under which Indian timber land held in trust may be sold and the proceeds distributed. Section 407 states:

Under regulations prescribed by the Secretary of the Interior, the timber on unallotted trust land in Indian reservations or on other land held in trust for tribes may be sold in accordance with the principles of sustained-yield management or to convert the land to a more desirable use. After deduction, if any, for administrative expenses under section 413 of this title, the proceeds of the sale shall be used—

(1) as determined by the governing bodies of the tribes concerned and approved by the Secretary, or

(2) in the absence of such a governing body, as determined by the Secretary for the tribe concerned.

25 U.S.C. § 407. The statute at 25 U.S.C. § 466 provides for the Secretary's duties with respect to the management of Indian forestry and range lands:

The Secretary of the Interior is directed to make rules and regulations for the operation and management of Indian forestry units on the principle of sustained-yield management, to restrict the number of

livestock grazed on Indian range units to the estimated carrying capacity of such ranges, and to promulgate such other rules and regulations as may be necessary to protect the range from deterioration, to prevent soil erosion, to assure full utilization of the range, and like purposes.

25 U.S.C. § 466.

In his complaint in Case No. 11–676L, plaintiff raises no factual allegations regarding the management or sale of Indian land held in trust. All plaintiff states is that he seeks "[a]ll further relief, from trust of defendant, pursuant to, 25 USCS 406, 25 USCS 407, and 25 USCS 466: $3,000,000.00." Plaintiff's complaint in Case No. 11–676L, however, does not mention the words timber, land, forestry, livestock, or range units. Plaintiff's only factual allegations are based on his assertion that his mother was enrolled in a native-owned regional corporation under the ANCSA statute and that, therefore, he is entitled to stock and to be enrolled in one of the Native corporations. As such, the statutes at 25 U.S.C. §§ 406–407 and 25 U.S.C. § 466 are not related to the factual allegations contained in plaintiff's complaint. Plaintiff has not "plead[ed] factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." *Cambridge v. United States,* 558 F.3d at 1335 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). In sum, plaintiff does not allege any claims upon which relief can be granted arising under 25 U.S.C. § 162a(d), 25 U.S.C. §§ 406–407, 25 U.S.C. § 466, or 25 U.S.C. § 1401, *et seq.*

In addition, this court cannot order the type of declaratory and equitable relief plaintiff requests in Case No. 11–676L, as the court could not do in Case No. 10–536L. As discussed above, this court does not have the power to grant equitable or declaratory relief except in limited circumstances. *See Nat'l Air Traffic Controllers Ass'n v. United States,* 160 F.3d at 716–17; *see also United States v. Tohono O'Odham Nation,* 131 S.Ct. at 1729 (The United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers."); *Massie v. United States,* 226 F.3d

at 1321 ("Except in strictly limited circumstances, *see* 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief. *See [United States] v. King,* 395 U.S. at 4 [89 S.Ct. 1501] ('cases seeking relief other than money damages from the court of claims have never been "within its jurisdiction" '); *Placeway Constr. Corp. v. United States,* 920 F.2d 903, 906 (Fed.Cir.1990)"); *James v. Caldera,* 159 F.3d at 580 (1998) ("[T]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.' " (quoting *Austin v. United States,* 206 Ct.Cl. at 723); *Halim v. United States,* 106 Fed.Cl. at 683–84; *Smalls v. United States,* 87 Fed.Cl. at 307.

This court is not empowered by Congress to order the "[e]qual-share distribution of stock" to plaintiff he alleges is "authorized by the, Alaska Native Claims Settlement Act, 43 U.S.C.S. 1601 et seq." Neither can the court grant plaintiff's requests that "[a]ll records/files of the BIA, be corrected and reflect such information/data, as intented [sic] by U.S. Congress, Plaintiff enrolled in Doyon," or that "[p]laintiff be afforded all trust responsibility by the Secretary of the Interior, as authorized in 25 U.S.C.S. 162a(d)." None of the money mandating based exceptions, which permit the United States Court of Federal Claims to grant declaratory and equitable relief, apply to plaintiff's allegations.

For the reasons discussed above, as in Case No. 10–536L, plaintiff's claims in Case No. 11–676L, also are barred by the applicable statute of limitations. Plaintiff reached the age of majority by 1996 and did not file the complaint in Case No. 11–676L until October 13, 2011, even later than the filing of Case No. 10–536L, which was well beyond the applicable three-year statute of limitations.

## CONCLUSION

Defendant's motion to dismiss Case No. 10–536L is **GRANTED,** and plaintiff's complaint in Case No. 10–536L is **DISMISSED.** Plaintiff's complaint in Case No. 11–676L is also **DISMISSED.** These are now the third and fourth complaints filed by plaintiff in the

United States Court of Federal Claims, each of which has been dismissed. The Clerk of the Court is directed not to file further *in forma pauperis* complaints from this plaintiff without the necessary filing fee or a signed Order by a Judge of this court.

**IT IS SO ORDERED.**